**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SAMANTHA PARRENO,

       Plaintiff,

    v.

DAVID SUTHERLAND INC., PERENNIALS
AND SUTHERLAND, LLC, DAVID
SUTHERLAND, LLC; BERTRAM CAPITAL;
and JENNIFER HIRZ,

       Defendants.

No. 24 CV 13180

Judge Georgia N. Alexakis

**MEMORANDUM OPINION AND ORDER**

Plaintiff Samantha Parreno worked for defendant Perennials and Sutherland, LLC ("Perennials"), but was terminated after taking a pregnancy-related leave of absence. Parreno, proceeding *pro se*, sues Perennials and the related corporate entities David Sutherland Inc., David Sutherland, LLC, and Bertram Capital, as well as human resources manager Jennifer Hirz (collectively, "defendants") for employment discrimination and retaliation under both federal and state law, as well as common-law theories of defamation and breach of implied contract. Defendants now move to dismiss. [28].

For the reasons given below, that motion is granted in part and denied in part.

## I.  Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept

the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor (as the Court does in the section that follows), but a court need not accept legal conclusions or "threadbare recitals" supported by "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.  Background

Parreno worked in sales at Perennials' showroom—neither party explains what was being sold—from May 13, 2019, until October 13, 2024, during which time she consistently met or exceeded performance expectations. [8] ¶ 12. Parreno was pregnant twice during this tenure. *Id.* ¶ 13. During the third trimester of the first pregnancy in 2021, Parreno "faced excessive work hours and was compelled to take on the responsibilities of multiple positions following the resignation of the entire Inside Sales team at the Chicago Showroom." *Id.* Parreno informed defendants that the workload was unmanageable, but she received no assistance and was left "to work long hours without breaks over extended periods." *Id.*

On June 29, 2023, Parreno informed defendants of another pregnancy and "requested support to manage [her] workload." *Id.* ¶ 14. On July 11, 2023, Parreno then received "a Corrective Action based on pretextual allegations that were not disclosed during the disciplinary meeting." *Id.* ¶ 15. Parreno says that "Defendants misrepresented the Plaintiff's account inactivity in [their subsequent EEOC] Position Statement by falsely claiming that there was no activity for several days." *Id.* ¶ 16. Parreno does not explain what she means by account inactivity, but the Court understands Parreno to be saying that she was disciplined for not working or not working enough during a certain period. Parreno further clarifies that the four days

of inactivity at issue included a weekend (when defendants were closed), one day of approved time off, and a federal holiday (when defendants were again closed). *Id.* On July 12, Parreno challenged the corrective action and raised concerns of retaliation and unfair treatment, "but received no substantive response from defendants." *Id.* ¶ 17.

On August 14, 2023, Parreno experienced a miscarriage and required medical leave. *Id.* ¶ 18. Parreno contacted Hirz, then the human resources director, who provided Parreno with a letter on August 15, 2023, indicating that Parreno was eligible for medical leave and including the documentation Parreno needed to invoke the Family Medical Leave Act ("FMLA"). *Id.* ¶ 19. Parreno's doctor promptly submitted that documentation and defendants' benefits administrator approved Parreno's leave, beginning on August 16, 2023. *Id.* ¶ 20. But despite this initial approval, defendants "retroactively reclassified Plaintiff's leave as 'Non-FMLA Medical Leave' while Plaintiff was on leave … without notice, consent, or explanation." *Id.* ¶ 21.

Parreno also alleges that during her leave "Defendants manipulated [her] PTO records and altered commission eligibility." *Id.* ¶ 22. Defendants' employees are "eligible for monthly commission only if they are actively employed on the 15th day of the month." *Id.* Parreno alleges that because she used personal time off ("PTO") for her absence on August 15, 2023, that she should have qualified for the commission. *Id.* But, despite this, Parreno was denied a commission for that month. *Id.* And on October 10—three weeks after Parreno returned to work and three days before her

termination—defendants retroactively changed her medical leave to start on August 15. *Id.* ¶ 23. Further confusing matters, Parreno subsequently received a corrected letter from defendants' third-party benefits administrator after her termination confirming that her medical leave start date was August 16, or one day after she would have qualified for the commission. *Id.* ¶ 25.

After Parreno returned from her medical leave on September 20, 2023, she was "subjected [] to heightened scrutiny, public reprimands, and increased performance expectations not imposed on similarly situated employees." *Id.* ¶ 27. About three weeks later, on October 13, 2023, Parreno was terminated "for pretextual reasons." *Id.* ¶ 28. To support this characterization, Parreno references in her complaint, and attaches to it as well, an excerpt from an Illinois Department of Economic Security ("IDES") determination[1] that found that Parreno "was discharged from DAVID SUTHERLAND INC. because she showed no activity in Salesforce for 3 hours" and that her discharge "was not a violation of a reasonable rule or policy of the employing unit." *Id.* at 57.

Parreno filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 9, 2024, in which she named her employer as "Perennials and Sutherland, LLC." *Id.* at 18. In the charge, Parreno states that she disclosed her pregnancy to the showroom manager on June 29, 2023, asking for help because she "felt unsupported by the showroom team … so overloaded

---

[1] The Court understands this document to come from the IDES process establishing whether Parreno qualified for state unemployment benefits, the fact of which is not relevant to her claims.

with responsibilities that [she] was unable to take lunch or break … and that [she] was concerned the situation was taking a toll on [her] pregnancy." *Id.* at 19. Parreno further related that on July 11, 2023, she met with Emily Pool, the sales director, and Angela Lugo, the showroom manager, and learned she was receiving a corrective action. *Id.* at 19–20. Parreno contested the corrective action and was told by Pool that the concerns would be reviewed but heard nothing more. *Id.* at 20.

Parreno received a right-to-sue letter from the EEOC on September 25, 2024. *Id.* at 23. Proceeding *pro se*, Parreno timely filed a complaint in federal court on December 23, 2024. [1]. Parreno brings claims under Title VII and the Illinois Human Rights Act for pregnancy discrimination and retaliation; the FMLA for interference with leave and retaliation; the Illinois Whistleblower Act ("IWA") for retaliation against her for reporting "PTO manipulation and FMLA reclassification"; and common-law claims of defamation and breach of implied contract. [8] at 1–2, 13–14.[2]

Defendants move to dismiss under Rule 12(b)(6). [28].

## III. Analysis

### A. Counts I and III: Title VII and IHRA

At the threshold, defendants argue that David Sutherland LLC ("Sutherland LLC"), David Sutherland Inc. ("Sutherland Inc."), Bertram Capital ("Bertram"), and Hirz should be dismissed from the Title VII and IHRA claims for two reasons: first, that they are not Parreno's "employer" for the purpose of those statutes, and second,

---

[2] Although Parreno lists the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*, toward the outset of her complaint, [8] at 2, she does not mention the statute again and alleges nothing that approximates a claim brought under it. The Court therefore does not understand Parreno's complaint to be advancing a claim under the IWPCA.

because Parreno has failed to exhaust administrative remedies against those entities because they were not named in the employment discrimination charge. [29] at 6–7. Defendants do not dispute that Perennials was Parreno's employer and that she exhausted her administrative remedies against that entity.

### 1. Hirz's Liability Under the IHRA

The IHRA provides liability for "employers," which is defined, as relevant here, as "[a]ny person *employing one or more employees* within Illinois." 775 ILCS 5/2-101(B)(1)(a). While the Court accepts Parreno's allegation, as it must, that Hirz is "the former Director of Human Resources and current Vice President for Human Resources for Perennials," [8] ¶ 9, nothing in the complaint indicates that Parreno was ever Hirz's *employee*. Parreno's IHRA claim against Hirz in her individual capacity is therefore dismissed. *See Kozlowski v. Greenridge Farm, Inc.*, 338 F. Supp. 3d 828, 834 (N.D. Ill. 2018) ("Kozlowski's IHRA pregnancy discrimination claim against Shannon can proceed only if he qualifies as an 'employer' under [the IHRA].").

### 2. Joint Employer Liability

That leaves the corporate defendants. Defendants argue that while Parreno "vaguely alleges the Sutherland Entities are 'integrated enterprises' …[she] fails to allege the Sutherland Entities satisfy the test to establish corporate affiliates are

single enterprises … under Title VII." [29] at 5–6.[3] For her part, Parreno contends that the corporate defendants are either her joint employers or comprise a single entity for the purpose of her employment. [34] at 1–3.

As the Seventh Circuit has recognized, "a plaintiff may have multiple employers for the purpose of Title VII liability." *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). "An entity can be an indirect employer or a joint employer or have some other complex combined relationship with an employee." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 905 (7th Cir. 2018) (citation omitted). To determine whether an entity is an employer, courts analyze the five factors of the so-called *Knight* test: (1) who controls and supervises the worker; (2) nature of her occupation and required skills; (3) who pays costs of things like equipment or the workplace; (4) who handles payments and benefits; and (5) the length of the job commitment. *Id.* (citing *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378–79 (7th Cir. 1991)). The most important factor is supervision and control, especially the ability to hire and fire. *Id.*

There is no dispute that Perennials employed Parreno. As to the other corporate entities, Parreno alleges that Sutherland Inc. and Sutherland LLC "operate as integrated employers" with Perennials and that Bertram "is an investment parter

---

[3] A brief note on terminology. While Parreno uses the term "integrated enterprise" in her complaint, [8] ¶ 7, the Seventh Circuit has clarified that it "no longer applies the 'integrated enterprise' test to Title VII claims." *Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001). The Court understands Parreno to be arguing in substance that the corporate defendants are effectively a single employer for the purpose of Title VII. *See* [34] at 2. *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed.") (cleaned up).

of Perennials [] and is directly involved in its management and government," though does not explain the nature of this involvement. [8] ¶¶ 7–8.

The details in the complaint regarding Sutherland Inc. and Sutherland LLC are spare, but Parreno attaches several documents to her complaint, which the Court may also consider. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639–40 (7th Cir. 2015) ("In deciding a Rule 12(b)(6) motion, the court may consider documents attached to a complaint, such as contract documents, without converting the motion into one for summary judgment.").

These documents are illuminating. For one thing, the FMLA paperwork Parreno received from defendants' third-party benefits administrator opens with: "This letter confirms decisions made regarding your recent request(s) for leave from your position at *David Sutherland, LLC* for your own serious health condition." [8] at 46 (emphasis added). Parreno also attaches an unemployment benefit claim that indicates that she "was discharged from DAVID SUTHERLAND INC. because she showed no activity in Salesforce for 3 hours." *Id.* at 57. Drawing all inferences in Parreno's favor, as the Court must at this phase, these documents strongly suggest that Parreno's FMLA and unemployment benefits were provided through these entities. The provision of benefits is, of course, one factor of the joint employer test. *See Johnson*, 892 F.3d at 905.

Defendants attach other documents to their motion, [29-1] which the Court may consider to the extent that they are referred to in Parreno's complaint and central to her claims. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (citing *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)). These include an email exchange between Parreno and Emily Pool, the sales director and one of the supervisors who issued Parreno the corrective action on July 11, 2023. [8] at 19–20; [29-1] at 17. Pool's email address is epool@davidsutherlandinc.com. [29-1] at 17. Likewise, in defendants' exhibits, Hirz's email address appears as jhirz@davidsutherlandinc.com. *Id.* at 25. The Court makes the reasonable inference that Pool and Hirz worked for the company reflected in their email addresses: Sutherland Inc.

Parreno herself attaches additional documents to her response brief. [35]. Among the additional documents are Parreno's W-2 and earnings statement, which list "David Sutherland LLC" as her employer, [35] at 10–11, as well as a Perennials employee handbook that reads "I am entering into this Proprietary Information and Inventions Agreement (the 'Agreement') with David Sutherland Inc., Perennials Inc. … and their affiliates ('the Company' or 'DSI')," *id.* at 5, 8. The handbook then references "my employment or continued employment by the Company." *Id.*

Consideration of extrinsic evidence at the motion to dismiss stage is generally forbidden, unless the Court converts the motion to one for summary judgment. Fed. R. Civ. P. 12(d); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). But the Court may consider additional documents from Parreno "to the extent such

9

documents elaborate on and are consistent with [her] factual allegations" in her complaint. *Edwards v. Dart*, No. 21 C 5665, 2022 WL 3543474, at *4 n.1 (N.D. Ill. Aug. 17, 2022) (citing *Geinosky*, 675 F.3d at 745 n.1). Defendants argue that the Court should "should summarily disregard these exhibits and assertions as case law squarely prohibits Plaintiff from effectively amending her Complaint through her Opposition." [36] at 2. But the W-2, earnings statement, and employee handbook all elaborate on and are consistent with Parreno's allegation that Perennials, Sutherland LLC, and Sutherland Inc. are, in effect, a single employer. [8] ¶ 7. The Court therefore considers the documents it just described to resolve this motion.

Accepting Parreno's allegations as true and taking all inferences in her favor, she has sufficiently alleged that Perennials, Sutherland LLC, and Sutherland Inc. were her joint employers for the purpose of Title VII and IHRA liability. The Court can infer from the W-2, earnings statement, and FMLA letter that Parreno was paid through Sutherland LLC and received benefits via that entity. The IDES determination suggests that Parreno's unemployment benefits ran through Sutherland Inc.; the employee handbook refers to "employment" for "the Company," defined as Perennials, Sutherland Inc., and "their affiliates"; and Pool and Hirz, who were involved in Parreno's discipline and benefits, appear to have been employees of Sutherland Inc. (or at least represented themselves to the outside world in that manner). In other words, Parreno's allegations—and the exhibits of both Parreno and defendants—compel the inference that Sutherland LLC and Sutherland Inc. were both involved in the supervision and control of Parreno's work, as well as her benefits

10

and payment. That is enough to show an employment relationship under *Knight* at this phase, 950 F.2d at 378–79, particularly where defendants do not dwell on any of the other relevant factors in advance their contrary view.[4]

Parreno has not sufficiently alleged, however, an employment relationship with Bertram. While Parreno alleges that Bertram is "directly involved in [the] management and governance" of the other entities, she provides no further details about that involvement. The bare allegation is not enough to show that, under *Knight*, Bertram was employer. Bertram is therefore dismissed on that basis.

### 3. Administrative Exhaustion

"Ordinarily, a party not named as the respondent in an EEOC charge may not be sued under Title VII." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008). The Seventh Circuit recognizes an exception, though, "where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings." *Id.*

According to defendants: "Devoid from the Complaint and the Opposition is any suggestion that Hirz, Sutherland LLC, or Sutherland, Inc. were provided this opportunity." [36] at 4. Likewise, defendants argue "that these entities are now represented by the same counsel has no bearing whatsoever on whether they had notice" and that "Plaintiff has not alleged … Hirz had notice of the Charge." *Id.* But defendants themselves have submitted as an exhibit a screenshot of the EEOC

---

[4] The Court did not consider any additional exhibits from Parreno in this analysis, and so does not reach whether they are appropriate to consider at this phase.

11

respondent portal website. [29-1] at 39. Although the screenshot has been provided in such a way that the Court cannot see whether a particular individual was listed as a contact for Perennials, the screenshot does show "jhirz@davidsutherlandinc.com" as the respondent's email address and shows the same phone number that Hirz used in her email signature. [29-1] at 29, 39. Because the EEOC used Hirz's contact information during the charge process, the Court reasonably infers that Hirz, who is described in the complaint as "the former Director of Human Resources and current Vice President of Human Resources for Perennials," [8] ¶ 9 had notice of the EEOC charge. The Court further and reasonably infers that Hirz had this role for Sutherland Inc., which provided the email address, as well. The Court also credits Parreno's contention that Hirz "functions as a shared HR executive across all three entities," [34] at 5, as the employee handbook defines Perennials and Sutherland LLC as the same "Company," [35] at 5, 8. Additionally, the business address of Sutherland LLC from Parreno's W-2 appears to be the same address listed for the respondent in the screenshot of the EEOC respondent portal, as well as the address Hirz provides in her email signature. [29-1] at 29, 39; [35] at 10.

Defendants argue that Parreno "has not alleged Hirz was in [the role of vice president for human resources] role *when the EEOC Charge was filed*," [36] at 4 (emphasis added), but Parreno also has not alleged otherwise, and the Court is required to draw all inferences in Parreno's favor, not against her. Defendants likewise do not explain why Hirz's previous role as human resources director would

have been insufficient to provide notice, nor why Hirz's role at time of filing would be dispositive with regard to notice or opportunity to conciliate.

Therefore, based on Parreno's complaint and the narrow set of additional documents it considers at this juncture (for the reasons already given), the Court draws the reasonable inference that Hirz directly participated in the EEOC charge process and had a high rank in the human resources department of all three entities. Hirz's role across the three entities, combined with the apparent interrelation of the entities, is sufficient at this phase to establish both notice and an opportunity to conciliate. *See Eggleston v. Chicago Journeymen Plumbers" Loc. Union No. 130, U. A.*, 657 F.2d 890, 907 (7th Cir. 1981) ("[I]f a party has a close relationship with a named respondent … and has actual notice of the EEOC charge … to the extent that the [party] could have participated in conciliation efforts, [it] should not be heard to cry 'foul' when later made a defendant in a suit.") (cleaned up). If discovery undercuts or disproves these inferences, defendants can renew their exhaustion argument in a motion for summary judgment.

### 4. Pregnancy Discrimination

Title VII, as amended by the Pregnancy Discrimination Act*, "*makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015); 42 U.S.C. § 2000e(k) ("The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes."). As with

13

other claims of employment discrimination under Title VII, Parreno's burden is minimal at this stage: she must only allege that she suffered some employment harm as a result of her pregnancy. *See Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024) ("'I was turned down for a job because of my race' is all a complaint has to say.") (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). "The words 'discriminate against,' we have explained, refer to 'differences in treatment that injure' employees." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354 (2024).

Defendants argue that Parreno's discrimination claim must fail because it "boils down to a single allegation that after she purportedly disclosed her pregnancy to Defendants, they issued her a Corrective Action. But a Corrective Action is simply not an adverse employment action under the law." [29] at 9 (citing *Johnson v. Johnson & Johnson*, 67 F. Supp. 3d 1001, 1010 (N.D. Ill. 2014)).

Even assuming defendants are right on this point, their argument still fails. The corrective action is not the only harm alleged. Parreno also alleges that defendants retroactively and improperly denied her pregnancy-related FMLA leave, [8] ¶ 21; "manipulated Plaintiff's PTO records and altered commission eligibility" and as a result "Plaintiff never received their commission for August 2023, resulting in financial harm," *id.* ¶ 22; and "terminated [her] for pretextual reasons" three weeks after returning from her pregnancy-related leave, *id.* ¶¶ 27–28.

Defendants have advanced no argument as to why these allegations do not suffice in order to adequately state a claim for pregnancy discrimination under both

Title VII and the IHRA. *See* [29] at 8–9; *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (same standard for both Title VII and IHRA claims). Having forfeited any such opposition at the motion-to-dismiss stage, defendants' efforts to dispose of Parreno's Title VII and IHRA discrimination claims thus fail.

### 5. Title VII and IHRA Retaliation

Parreno's retaliation claims survive for similar reasons. "To plead a Title VII retaliation claim, a plaintiff must (though she need not use the specific terms) allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015). Complaining about discriminatory treatment to human resources is a statutorily protected activity. *See* 42 U.S.C. § 2000e-3(a) (protected activity encompasses "oppos[ing] any practice made an unlawful employment practice by [Title VII]"); *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). "In the retaliation context, 'adverse employment action' simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." *Id.*

With respect to statutorily protected activity: In the complaint itself, Parreno alleges that on July 12, 2023, she "contested the Corrective Action, explicitly citing retaliation, and referenced [her] concerns of unfair treatment," which in context clearly refers to the alleged pregnancy discrimination. [8] ¶ 17. And in the EEOC charge attached to the complaint, Parreno alleges that she was "ultimately terminated in retaliation for speaking up about my treatment," *id.* at 19, and also specifies that on September 22, 2023—just days after returning to work—Parreno

"met with Ms. Hirz to discuss my concerns" and that because "nearly two and a half months had passed since I had submitted my rebuttal alleging retaliation … I felt I had no choice but to escalate my concerns to HR." *Id.* at 20. Parreno further stated that she "told Ms. Hirz that I had asked for help from Ms. Lugo because I was pregnant and felt unsupported by the showroom team but that rather than help, Ms. Lugo had issued me a Corrective Action." *Id.*

In response, defendants ignore the contents of Parreno's EEOC charge. [29] at 9–10. They instead focus on the July 12, 2023 email, which defendants contend "demonstrates that Plaintiff never complained about any activity that Title VII protects" and that "[f]or the same reasons, Plaintiff's September 22, 2023 conversation with Hirz—premised entirely on the purported complaints in the July 12, 2023 email—is not protected activity." *Id.* at 10. But the July 12 email upon which defendants rely, forwarded by Parreno's supervisor to Hirz, is described by that supervisor as "the email that Samantha sent this morning regarding *the conversation we had with her from yesterday*" [29-1] at 17 (emphasis added). The email is thus self-evidently not the extent of Parreno's complaints to her employer. Even more remarkably, in the July 12, 2023, email, Parreno states that "during my third trimester of [a] pregnancy, the showroom team once again resigned, leaving me without adequate support" and that "I believe I have faced retaliatory actions as a result of asserting my legitimate concerns." *Id.* at 19. This is more than enough to infer that Parreno engaged in a protected activity: complaining about pregnancy discrimination and retaliation.

As to the adverse employment action, as discussed above, Parreno alleges that she was inappropriately denied FMLA leave and her August 2023 commission before ultimately being terminated. The Court concludes that this constellation of alleged harms would dissuade a reasonable worker from complaining about her treatment. *Huri*, 804 F.3d at 833.

Finally, defendants contend that Parreno "fails to connect her purported protected activity to any adverse employment action" because "the Complaint makes it clear that each purported adverse employment action was because of a non-retaliatory reason." [29] at 10–11. The Court has carefully reviewed Parreno's complaint and does not agree with defendants' characterization. The complaint lays out the reasons Parreno was given for various adverse actions, but also makes quite clear that, in Parreno's view, these reasons lacked foundation and were therefore pretextual. *See, e.g.*, [8] ¶¶ 15–16, 21–23, 25–26, 28, 33. Defendants' arguments on this issue are more suitable for summary judgment or a jury trial, not a motion to dismiss. Parreno has thus stated claims for retaliation under Title VII and the IHRA.

### B. Count II: FMLA Interference and Retaliation

Defendants argue that plaintiffs' FMLA claims "must be dismissed because she was not eligible for FMLA leave because she did not work out of a location with 50 employees in a 75-mile radius." [29] at 12.[5] Defendants support this with a citation

---

[5] As with Title VII and the IHRA, the FMLA allows multiple entities to be liable for violations. *See Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 608 (7th Cir. 2014) (discussing joint and single employer liability under the FMLA regulations). Parreno has adequately alleged that Sutherland LLC and Sutherland Inc. are her employers for the purpose of the FMLA for the same reasons they are her employers under Title VII. But because Parreno has not

17

to a single line in the FMLA letter their benefits administrator sent to Parreno that reads, in its entirely: "Decision Reason = Ineligible - Worksite Exemption." [29] at 12 (citing [8] at 58). This would be insufficient to conclusively establish the number of employees at Parreno's worksite in any context. And attached to the same complaint is a letter from the same benefits manager one month earlier that approved Parreno's request for FMLA leave. *Id.* at 46. Defendants do not explain why the Court is obliged to assume the second letter's assessment of Parreno's eligibility is correct.

Having just cited the letter revoking Parreno's FMLA leave to demonstrate her ineligibility for such leave, defendants immediately pivot to arguing that "because Defendants proactively contacted her about her FMLA leave and *permitted her to take the entirety of the leave she requested* … her interference claim must fail." [29] at 12 (emphasis added). Defendants cannot have it both ways and in this instance will have it neither way. Taking all inferences in Parreno's favor, the Court concludes that Parreno was entitled to FMLA leave and requested it but received none. She has thus stated a claim of FMLA interference. *See Brown v. Auto. Components Holdings*, LLC, 622 F.3d 685, 689 (7th Cir. 2010) (elements of FMLA interference).

Defendants' sole argument against Parreno's FMLA retaliation claim is that "like her retaliation claims under the IHRA and Title VII, she has not alleged any connection between the purported adverse actions and her use of FMLA leave." [29]

---

alleged any facts indicating Bertram exercised any control over her work, she has not stated an FMLA claim against Bertram. *See Moldenhauer v. Tazewell-Pekin Consol. Communications Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008). ("[W]e hold generally that for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee.").

at 13. Like Parreno's IHRA and Title VII, her FMLA retaliation claim survives. Again, Parreno has alleged that during her leave defendants manipulated her records to deprive her of her commission; that immediately after her return from leave "Defendants subjected her to heightened scrutiny, public reprimands, and increased performance expectations not imposed on similarly situated employees"; and that she was terminated just three weeks after returning from leave "for pretextual reasons." [8] ¶¶ 22, 27–28. This means Parreno has alleged multiple adverse actions during and immediately after she used FMLA leave. This is more than enough to infer a connection at this phase.

Parreno has thus stated a claim for FMLA retaliation. *See Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011) (elements of FMLA retaliation).

### C.    Count IV: Illinois Whistleblower Act

The Whistleblower Act protects employees from retaliation for disclosing to "a government or law enforcement agency" that their employer has violated state or federal law. *See* 740 ILCS 174/15(b). Parreno alleges that she was retaliated against for "reporting PTO manipulation and FMLA reclassification." [8] at 15. But "for disclosures to be protected by the Whistleblower Act, they cannot be made solely to the wrongdoer—they must be made to 'a government or law enforcement agency.'" *Cary v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 19 C 03014, 2020 WL 1330654, at *7 (N.D. Ill. Mar. 22, 2020) (quoting 740 ILCS 174/15(b)). And Parreno does not identify any government or law enforcement agency to which she reported these alleged violations of the law.

Instead, Parreno cites *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887, involving 740 ILCS 174/20, to argue that despite not reporting misconduct externally, she states a claim under the Whistleblower Act because she refused to participate in a violation of the law. [34] at 11. Parreno argues that this "claim is anchored in her internal refusal to backdate FMLA paperwork, manipulate commissions, and participate in retaliatory discipline." *Id*. But, according to the operative complaint, these were all things that were *done to* Parreno, not things in which she was asked to participate. She has not alleged, for example, that she was asked to backdate anything herself. *See* [8] at 21 ("Ms. Hirz attempted to get them to backdate the leave by one day so that Respondent could avoid having to pay my commissions."). Parreno thus has not alleged that "she refused to participate in an activity that would result in a violation of a state or federal law, rule or regulation," *Young*, 2015 IL App (1st) 131887 ¶ 48, and has not stated a claim under the Whistleblower Act.

### D. Count V: Defamation

Parreno next claims that defendants defamed her by "knowingly making false and defamatory claims," including that she was ineligible for FMLA leave, that she knew the approved leave was non-FMLA leave, that her leave started on August 15, and that she never raised concerns about retaliation. [8] ¶ 29. Parreno alleges that "[t]hese statements were made in bad faith and cause significant harm to [her] professional reputation," though does not explain what harm. *Id.* ¶ 30.

As defendants point out, this claim "is premised entirely on statements made in Perennials' EEOC Position Statement," [29] at 14—something Parreno does not

dispute—and under Illinois law statements made in "quasi-judicial" proceedings like the EEOC process "are privileged and cannot be the basis for a private cause of action." *Zhan v. Cnty. of Cook*, 03 C 9043, 2004 WL 2966953, at *4 (N.D. Ill. Nov. 23, 2004) (citing *Thomas v. Petrulis*, 125 Ill. App. 3d 415 (2d Dist. 1984)).

Parreno therefore has not stated a claim for defamation.

### E.    Count VI: Breach of Implied Contract

Finally, the complaint alleges "breach of implied contract." [8] at 15. The only details provided are "[f]ailure to honor policies regarding commissions and PTO." *Id.* (citing *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482 (1987)). Parreno provides no details about the alleged contract—for example, what was in it—or about the alleged failure to abide by it. As a result, Parreno has not alleged facts that would allow the Court to infer "(1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Sols., Inc.*, 2022 IL 127903, ¶ 28. Parreno has thus not stated a claim for breach of implied contract.

## IV.   Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss [28] in part and denies it in part. Counts IV, V, and VI are dismissed without prejudice. Defendants Bertram Capital and Jennifer Hirz are also dismissed. Defendants' motion is otherwise denied.

The Court grants Parreno leave to file an amended complaint on or before 3/18/2026 if she can cure the deficiencies with the dismissed claims while still complying with her Rule 11 obligations. *See Runnion ex rel. Runnion v. Girl Scouts*

*of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). If Parreno elects not to file a second amended complaint by 3/18/2026, the dismissal of those claims will convert to a dismissal with prejudice.

The Court sets a status hearing at 9:30 a.m. on 3/3/2026 for the parties to discuss next steps in these proceedings. The Court further notes that it previously denied plaintiff's motion for attorney representation without prejudice to renewal at a later stage in the litigation. [6]. Plaintiff is invited to renew her motion for attorney representation either in advance of the next status hearing via a written motion or at the status hearing via an oral motion.

ENTER:

_____
Georgia N. Alexakis
United States District Judge

Date: 2/18/2026